**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MONTEREY RESEARCH, LLC, | Case No. 2:24-cv-00238-JRG |
| Plaintiff and Counter-Defendant, | |
| v. | **JURY TRIAL DEMANDED** |
| RENESAS ELECTRONICS CORPORATION, | |
| Defendant and Counter-Plaintiff, | |
| DENSO CORPORATION & DENSO INTERNATIONAL AMERICA, INC., | |
| Defendants. | |

**DEFENDANTS' MOTION TO SEVER AND STAY
PENDING FINAL RESOLUTION OF MANUFACTURER'S SUIT**

**TABLE OF CONTENTS**

**Page**

BACKGROUND AND PROCEDURAL HISTORY ................................................................. 2

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT ............................................................................................................................. 6

    A.    The Court should sever and stay claims against DENSO under the customer-suit exception ......................................................................................... 6

        1.    DENSO is a mere customer of Renesas, and Monterey's infringement allegations against DENSO are subsumed within its allegations against Renesas ...................................................................... 7

        2.    DENSO agrees to be bound to the outcome of Monterey's claims against Renesas ................................................................................... 9

        3.    Monterey's infringement allegations limit the accused products to Renesas components and DENSO products integrating Renesas components .................................................................................. 11

    B.    Traditional factors confirm that the claims against DENSO should be severed and stayed .............................................................................................. 12

CONCLUSION ................................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arigna Tech. Ltd. v. Nissan Motor Co.*,
   No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 138469
   (E.D. Tex. Aug. 3, 2022) ........................................................................................8

*Collaborative Agreements, LLC v. Adobe Sys.*,
   No. 1-14-CV-356-LY, 2015 U.S. Dist. LEXIS 178049
   (W.D. Tex. Aug. 21, 2015) ...................................................................................10

*CyWee Grp. Ltd. v. Huawei Device Co.*,
   No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173
   (E.D. Tex. Aug. 22, 2018) ..................................................................................5, 6

*Dali Wireless, Inc. v. Ericsson Inc.*,
   No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774
   (W.D. Tex. Jan. 30, 2023).......................................................................................5

*Dodots Licensing Sols. LLC v. Samsung Elecs. Co.*,
   No. 6:22-CV-00535-ADA, 2023 U.S. Dist. LEXIS 125803
   (W.D. Tex. July 20, 2023) ......................................................................................5

*Flygrip, Inc. v. Walmart Inc.*,
   No. 6:21-cv-01082-ADA, 2022 U.S. Dist. LEXIS 115655
   (W.D. Tex. June 29, 2022).......................................................................................5

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) .........................................................................7

*Kahn v. GMC*,
   889 F.2d 1078 (Fed. Cir. 1989).............................................................................4

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990).........................................................................4, 10

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
   No. 2:22-cv-00481-JRG, 2023 U.S. Dist. LEXIS 203583
   (E.D. Tex. Nov. 14, 2023) ............................................................................ *passim*

*Network Sys. Techs., LLC v. Texas Instruments Inc.*,
   No. 2:22-cv-00482-RWS, ECF No. 96, slip op. (E.D. Tex. Sept. 26, 2023)................... *passim*

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014).............................................................4, 5, 6, 11

*In re Papst Licensing GmbH & Co.*,
    767 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................13

*Sonrai Memory Ltd. v. Samsung Electronics Co.*,
    No. 6:21-cv-00169-ADA, 2022 U.S. Dist. LEXIS 32294
    (W.D. Tex. Feb. 24, 2022) ......................................................................................9

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ........................................................................4, 13

*UltimatePointer, LLC v. Nintendo Co.*,
    No. 6:11-CV-496-LED, 2014 U.S. Dist. LEXIS 185515
    (E.D. Tex. June 17, 2014) ......................................................................................11

*Wapp Tech L.P. v. Hewlett-Packard Enters. Co.*,
    No. 4:18-cv-00468, 2019 WL 3818761 (E.D. Tex. Aug. 14, 2019) ........................9

*Westport Fuel Sys. Can. v. Ford Motor Co.*,
    No. 2:21-cv-0453-RWS-RSP, 2023 U.S. Dist. LEXIS 9473
    (E.D. Tex. Jan. 19, 2023) ................................................................................12, 13

*Westport Fuel Sys. Can. v. Nissan N. Am., Inc.*,
    No. 2:21-cv-0455-JRG-RSP, 2023 U.S. Dist. LEXIS 10244
    (E.D. Tex. Jan. 20, 2023) ........................................................................................8

*Wyndham Assoc. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968) ....................................................................................5

**Other Authorities**

Fed. R. Civ. P.
    12(b)(6) ....................................................................................................................1
    21 ..........................................................................................................................4, 5

Defendants DENSO Corporation and DENSO International America, Inc. (collectively, "DENSO") along with Defendant Renesas Electronics Corporation ("Renesas") jointly request the Court sever and stay Plaintiff Monterey Research, LLC's ("Monterey") claims against DENSO pending final resolution of Monterey's identical claims against DENSO's upstream supplier, Renesas, under either the customer-suit exception or traditional stay factors.[1]

Severance and stay of Monterey's claims against DENSO is appropriate because this patent infringement case falls squarely within the customer-suit exception. Renesas is a Japanese semiconductor corporation that manufactures microcontrollers and systems-on-a-chip (collectively, "chips"). DENSO is one of Renesas's downstream customers. Monterey's pre-suit correspondence and Complaint acknowledge that Renesas is the "true defendant": Monterey's direct infringement allegations against Renesas and DENSO are identical and directed squarely at circuitry within only Renesas chips. *See* Ex. 1[2]; ECF No. 1.

DENSO is akin to a "mere reseller": it purchases chips and merely incorporates them into components critical to the operation of automobiles. Understandably, DENSO does not have knowledge of the accused circuitry or operational steps in Renesas chips. Nor does it modify or customize that circuitry or functionality, and, in fact, Renesas forbids its downstream customers from doing so. *See* Exs. 2-4. Monterey has not and cannot offer a direct infringement theory against DENSO that is separate or distinct from that levied against Renesas. Because

---

[1] Because Monterey added DENSO as a defendant for tactical reasons and without alleging facts adequate to state a claim against it, DENSO has filed a motion to dismiss under Rule 12(b)(6). ECF No. 16. DENSO respectfully submits that granting its 12(b)(6) motion would be the most appropriate way to narrow this case to the "true defendant" and to promote judicial and party economy in its resolution. Defendants file the instant motion in the event the Court would prefer to sever and stay claims against DENSO rather than dismissing them at this time.

[2] Citations to "Ex." refer to exhibits attached to the Declaration of Regan J. Rundio, submitted herewith, unless otherwise noted.

DENSO agrees to be bound by any rulings for or against Renesas on direct infringement and validity, resolving Monterey's claims against the "true defendant" Renesas will resolve the major issues underlying the claims against DENSO.  Judicial and party economy therefore counsel in favor of severing and staying the claims against DENSO pending resolution of Monterey's claims against Renesas.

## BACKGROUND AND PROCEDURAL HISTORY

On April 10, 2024, Monterey filed this patent infringement action against Renesas and DENSO.  ECF No. 1.  Seven years earlier, in 2017, Monterey approached Renesas about licensing its patents, but negotiations soon broke down after it became clear that Monterey lacked a good faith basis to accuse Renesas of infringement.  In April 2019, Monterey informed Renesas that it sent notice letters to several Renesas customers, including DENSO, notifying them that Monterey is within its "rights to enforce our patents against Renesas' downstream customers" while noting it would "prefer to settle the matter directly with Renesas."  Ex. 1.  Monterey has, therefore, long known that Renesas is the "true defendant" here, and claims against downstream customers like DENSO are peripheral.

Monterey's Complaint and infringement contentions plainly acknowledge DENSO as merely one of a numberof Renesas downstream customers.  Monterey alleges that "Renesas develops and sells semiconductor and integrated circuit products that are designed and marketed for automotive applications" and that "Denso utilizes these Renesas products in its automotive components and markets and sells those products through sales channels located in the United States."  Ex. 5 at 14.  It alleges that DENSO is "an important customer and OEM for Renesas" and that DENSO "integrates Renesas semiconductor devices and integrated circuits into a wide variety of devices that are integrated into other products, particularly for applications in the automotive industry."  *Id.* at 13.

All the allegedly infringing functionality is contained within the "semiconductor devices and integrated circuits" that Renesas manufacturers and that DENSO merely incorporates into its downstream products. The accused products are limited to Renesas chips: compact integrated circuits that typically include a processor, memory, and I/O peripherals on a single chip.[3] *See id.* at 2-3. All the allegedly infringing functionality is wholly contained with these chips. Monterey asserts four patents, U.S. Patent Nos. 6,243,300 (the "'300 patent), 7,679,968 (the "'968 patent"), 7,089,133 (the "'133 patent"), and 7,825,688 (the "'688 patent"). Monterey contends that certain Renesas chips infringe the '300 and '968 patents based on erasing mechanisms for transistor-level memory cells; the '688 patent based on their inclusion of a circuit with a bus connecting certain of the chip's circuit blocks; and the '133 patent based on a circuit for providing system level reset. ECF No. 1 ¶¶ 28, 41, 51, 53, 65.

Monterey's direct infringement allegations fixate on the Renesas chips and, specifically, circuit-level components therein. Monterey does *not* identify any allegedly infringing contributions from DENSO or suggest DENSO modifies or customizes the Renesas chips or their sub-components. Rather, Monterey merely asserts that "the specific accused DENSO Products . . . are those DENSO products that DENSO makes, sells, offers for sale, and/or are used in the United States that incorporate the [] infringing Renesas products." *Id.* at 12. Monterey only identifies two downstream DENSO products purportedly incorporating an accused Renesas chip, *id.*, and

---

[3]    The infringement contentions generically allege that Renesas's "28nm or 40nm microcontrollers (MCUs) with split gate non-volatile memory" infringe the '300, '133, and '688 patents. *Id.* at 2-3. The contentions further allege that Renesas's "MCUs or other semiconductor or memory products with 1T-MONOS technology" infringe the '968, '133, and '688 patents. *Id.* at 3. The contentions identify Renesas's "28nm microprocessors (MPUs) with no embedded flash memory" as additionally infringing the '133 and '688 patents, and "RL78 family MCUs" and "M16C family MCUs" as infringing the '133 patent. *Id.*

does not assert any direct infringement theory against DENSO products based on features external to the Renesas chips.

Renesas is the "true defendant," responsible for the design and development of the accused functionality; DENSO is, as is evident from the Complaint, one of Renesas' many downstream customers which cannot be expected to know about, much less modify, the allegedly infringing circuit-level components.

## LEGAL STANDARD

Questions of judicial and party economy often arise where a patent owner sues both a manufacturer and its customers for infringing the same patents based on the same accused products. That economy has driven courts to develop the "customer-suit exception" to the first-filed rule. That rule provides that when two suits implicate sufficiently overlapping issues, the first-filed suit should proceed in favor over the second-filed suit. *See, e.g.*, *Kahn v. GMC*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). The customer-suit exception permits a second-filed patent suit against a manufacturer to take precedence over a first-filed patent suit against the manufacturer's customer so as to "avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer that is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Courts apply the exception "to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

The same questions of judicial and party economy arise where a manufacturer and its customers are co-defendants *in the same suit*. In *In re Nintendo*, the Federal Circuit opined that courts could serve that economy by severing claims against the manufacturer under Federal Rule of Civil Procedure 21 and staying claims against the customer. 756 F.3d at 1365. Rule 21 provides

that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  Courts have long recognized that Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, when there are sufficient other reasons for ordering a severance."  *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).  The *Nintendo* court explained that Rule 21 and the customer-suit exception are both "designed to facilitate just, convenient, efficient, and less expensive determination."  756 F.3d at 1365.  Applying these principles, the Federal Circuit ordered claims against a manufacturer be severed and the claims against the customer stayed because the manufacturer's "liability is predicate to recovery from any of the defendants."  *Id.* at 1366.

Courts evaluating the applicability of the customer-suit exception analyze three-factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product."  *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173, at *14 (E.D. Tex. Aug. 22, 2018) (citation and internal quotation omitted).  This Court and others have applied this three-factor test to adjudicate whether claims against a customer should be severed and stayed pending resolution of claims filed in the same suit against a manufacturer.  *See, e.g.*, *Network Sys. Techs., LLC v. Samsung Elecs. Co.*, No. 2:22-cv-00481-JRG, 2023 U.S. Dist. LEXIS 203583, at *9 (E.D. Tex. Nov. 14, 2023); *Network Sys. Techs., LLC v. Texas Instruments Inc.*, No. 2:22-cv-00482-RWS, ECF No. 96 at 3-4, slip op. (E.D. Tex. Sept. 26, 2023) (attached as Ex. 6); *Dodots Licensing Sols. LLC v. Samsung Elecs. Co.*, No. 6:22-CV-00535-ADA, 2023 U.S. Dist. LEXIS 125803, at *5-12 (W.D. Tex. July 20, 2023); *Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 U.S. Dist. LEXIS 15774, at *7 (W.D. Tex. Jan. 30, 2023); *Flygrip,*

*Inc. v. Walmart Inc.*, No. 6:21-cv-01082-ADA, 2022 U.S. Dist. LEXIS 115655, at \*4-5, 9-10 (W.D. Tex. June 29, 2022).

The result of that three-factor test is typically dispositive, but courts may also consider the following traditional stay factors to confirm the propriety of severance and stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issue in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at \*23 (quoting *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-00340-JRG, 2020 U.S. Dist. LEXIS 219276, at \*3 (E.D. Tex. Apr. 6, 2020)).

## ARGUMENT

Severance and stay are warranted under the customer-suit exception and traditional stay factors.  Monterey itself has stated that it also would prefer to settle the matter of infringement "directly with Renesas."  Ex. 1 at 1.  Severing and staying respects Monterey's preference that Renesas—not Renesas' downstream customers—resolve Monterey's infringement claims. Customers like DENSO, which do not develop or design the accused chips, should not be burdened given that Renesas is the "true defendant" in this dispute.  *In re Nintendo*, 756 F.3d at 1365.

### A.    The Court should sever and stay claims against DENSO under the customer-suit exception.

Courts weigh the following factors in assessing severance and stay under the customer-suit exception: (1) whether the customer-defendant is merely a reseller; (2) whether the customer-defendant agrees to be bound by any determination on the claims against the manufacturer-defendant that favor the patent owner; and (3) whether the manufacturer is the only source of the infringing product.  *See CyWee*, 2018 U.S. Dist. LEXIS 142173, at \*14.  Each favors severing and staying the claims against DENSO.

1.    **DENSO is a mere customer of Renesas, and Monterey's infringement allegations against DENSO are subsumed within its allegations against Renesas.**

Factor one considers "whether the customer-defendant . . . is merely a reseller."  Courts have found that this factor favors severance and stay when the customer-defendant is not strictly a mere "reseller," but a customer that merely incorporates the product into its own.  *Cf. In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014) (holding that judicial economy is served "through a flexible approach" to the customer-suit exception).  This Court has relied on this factor in support of severance and stay where customers incorporate a manufacturer's accused chips as a component of a downstream product *without* affecting the chip's accused functionality, as corroborated by a significant overlap in the infringement allegations against the manufacturer and customer.

For example, in *Network System Technologies, LLC v. Texas Instruments Inc.*, this factor favored severance and stay where co-defendant Ford's cars merely incorporated allegedly infringing chips from co-defendant Texas Instruments (TI). Ex. 6 at 4-6.  The Court reasoned that TI was the "true defendant" given that plaintiff's allegations focused on TI's chips and Ford engineers attested that Ford does not "make modifications to the hardware components of" TI's chips, including any circuitry therein, or install "any software that affects the operation of the" chips beyond TI's defined operation parameters.  *Id.* at 5.  Indeed, though plaintiff proffered claim charts for both TI and Ford, they made "nearly identical allegations and do not identify alleged modifications or designs specific to Ford."  *Id.* at 5-6.

Similarly, in *Network System Technologies, LLC v. Samsung Electronics Co.*, this Court severed and stayed claims against co-defendant OnePlus where OnePlus's phones merely incorporated chips from co-defendant Qualcomm and said chips encapsulated all the allegedly infringing functionality (integrated circuits and related methods).  2023 U.S. Dist. LEXIS 203583, at *12-13.  The Court held that OnePlus was equivalent to a "mere reseller" because "the only

alleged infringing activities related to OnePlus are not tied to OnePlus's downstream products," there were no allegations that "OnePlus modifies or adapts Qualcomm Chips for use in OnePlus products," and, indeed, the plaintiff did not identify "any notable difference between its claim charts against Qualcomm and OnePlus." *Id.* at *13.

This factor favors severing and staying the claims against DENSO consistent with the logic of *Texas Instruments* and *Samsung*. Like Ford and OnePlus, DENSO merely incorporates a manufacturer's accused chips—Renesas' chips—into downstream products. *See* ECF No. 1 ¶¶ 3, 29, 40, 52. Monterey's direct infringement allegations, like those in *Texas Instruments* and *Samsung*, fail to suggest that the customer defendant modifies the hardware or software of the accused chip. *See also, e.g.*, *Westport Fuel Sys. Can. v. Nissan N. Am., Inc.*, No. 2:21-cv-0455-JRG-RSP, 2023 U.S. Dist. LEXIS 10244, at *6 (E.D. Tex. Jan. 20, 2023) (severing and staying claims against customer that merely integrated accused fuel injectors into cars without "modif[ying] or customiz[ing]" them); *Arigna Tech. Ltd. v. Nissan Motor Co.*, No. 2:22-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 138469, at *4, 10 (E.D. Tex. Aug. 3, 2022) (severing and staying claims against customers that merely integrated accused radar modules into vehicles without modifying them).

As in *TI*, the record here reflects that customers affirmatively do not modify the accused features. Renesas also does not allow its customers to change the accused functionality of the Renesas chips. *See* Ex. 2 ¶¶ 4-6; Ex. 3 ¶¶ 6-8; Ex. 4 ¶¶ 4-6. DENSO has no record of changing those features. *See* Ex. 7 ¶¶ 4-5. And, as DENSO confirmed in its co-pending Motion to Dismiss, "DENSO and other Renesas chip customers do not independently know the methods or circuits of the chips they purchase at the level of the Asserted Patents." ECF No. 16 at 2. "The Complaint and the licensing discussions alleged in it acknowledge this reality." *Id.* It is, therefore,

unsurprising that Monterey's direct infringement allegations against manufacturer and customer are identical, just as in *Texas Instruments* and *Samsung*. *See also Sonrai Memory Ltd. v. Samsung Electronics Co.*, No. 6:21-cv-00169-ADA, 2022 U.S. Dist. LEXIS 32294, at *9 (W.D. Tex. Feb. 24, 2022) (holding that "significant overlap" in the infringement contentions between chip manufacturer and downstream customer drew the action within the customer-suit exception).

In light of the above, Renesas is the "true defendant" and DENSO is akin to a mere reseller. This factor therefore strongly supports severance and stay.

## 2. DENSO agrees to be bound to the outcome of Monterey's claims against Renesas.

The second factor considers "whether the customer-defendant agrees to be bound by any determination on the claims against the manufacturer-defendant that favor the patent owner." *Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *9 (quoting *CyWee*, 2018 U.S. Dist. LEXIS 142173, at *14). Courts have found that this factor favors severance and stay where the customer agrees to be bound by the Court's claim construction rulings, judgments on infringement, and judgments on validity. *See, e.g.*, *id.*, at *22. But even less restrictive stipulations may suffice. *E.g.*, *Wapp Tech L.P. v. Hewlett-Packard Enters. Co.*, No. 4:18-cv-00468, 2019 WL 3818761, at *10-11 (E.D. Tex. Aug. 14, 2019) (agreeing to sever and stay where customer only agrees to be bound by rulings on infringement).

DENSO agrees to be bound by the Court's claim construction rulings and judgments on Monterey's claim of infringement and Renesas's defense of invalidity, mirroring the customer's stipulation in *Samsung*. Compare Ex. 8 (DENSO's stipulation), *with* Ex. 9 (OnePlus's stipulation in *Network Sys. Techs.*). *See also Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *22 (like the stipulation in *Network Sys. Techs.*, DENSO only carves out those claims bearing on DENSO's knowledge and intent). The proposed stay will therefore resolve the major issues

underlying Monterey's claims against DENSO.  *Cf. Katz*, 909 F.2d at 1464 (holding that resolution of the "major issues" in the manufacturer action will likely "resolve these issues as to their customers").

In the event Renesas prevails on direct infringement and/or validity, all of Monterey's claims against DENSO will be foreclosed by the judgment in favor of Renesas.  In the unlikely event Renesas does *not* prevail, questions of direct infringement and validity will be resolved against DENSO.  This is true even though Monterey asserts method claims because Monterey's infringement allegations as to those claims focus entirely on circuit-level functionality "not actually tied to [DENSO's] downstream products."  Ex. 6 at 7.  Method claims were also asserted in *Texas Instruments* and this Court nevertheless found that this factor favored severance, because the infringement allegations were "related to the internal workings of the" manufacturer's chips, not the customer's downstream products.  *Id.* at 8.  The same is true of Monterey's infringement allegations against DENSO, which focus on the internal workings of Renesas' chips.  Adjudication of infringement against Renesas will, therefore, resolve questions of direct infringement against DENSO even though method claims are at issue.  *See id.*; *see also Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *17 (rejecting that method claims should be treated differently under this factor where the evidence of infringement "does not rely on specific characteristics of the downstream products") (citation and internal quotation omitted).

If Monterey prevails on infringement and validity, even Monterey's indirect and willfulness claims against DENSO (which would require a showing of DENSO's knowledge and intent to infringe) are likely be resolved through exhaustion or the bar against double recovery.  *See Collaborative Agreements, LLC v. Adobe Sys.*, No. 1-14-CV-356-LY, 2015 U.S. Dist. LEXIS 178049, at *7 (W.D. Tex. Aug. 21, 2015) (granting severance and stay in part because, if the

manufacturer was found to infringe, the manufacturer's payment of a royalty would exhaust the patentee's remedies against customers); *UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496-LED, 2014 U.S. Dist. LEXIS 185515, at *14 (E.D. Tex. June 17, 2014) ("If . . . Nintendo is found to infringe and pays damages, then UltimatePointer cannot also collect damages from the Retailers for Nintendo products, because it cannot receive a double recovery for the same sales."); *In re Nintendo*, 756 F.3d at 1366 ("[I]f Secure Axcess were to collect royalties from [manufacturer] Nintendo, this would preclude suit against the Retailers.").

Accordingly, this factor strongly favors a stay.

### 3. Monterey's infringement allegations limit the accused products to Renesas components and DENSO products integrating Renesas components.

The third and final factor considers "whether the manufacturer is the only source of the infringing product." *Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *9 (quoting *CyWee*, 2018 U.S. Dist. LEXIS 142173, at *14). This factor favors severance and stay if the customer's only source of the product or component at issue. *See, e.g.*, *id.* at *22-23 (citing *Dali Wireless*, 2023 U.S. Dist. LEXIS 15774, at *13).

Renesas is the only source of accused chips and this factor therefore favors severance and stay. Monterey admits that it is "accusing only those DENSO products incorporating said infringing Renesas products." ECF No. 23 at 5. This aligns with the infringement contentions, which acknowledge that "the specific accused DENSO Products for each of the Asserted Claims [] are those DENSO products . . . that incorporate the [] infringing Renesas products." Ex. 5 at 12. The infringement contentions do not identify any accused DENSO product with a non-Renesas chip. Because Monterey admits it is "accusing only those DENSO products incorporating said infringing Renesas products," ECF No. 23 at 5, it cannot be disputed that this factor favors

severance and stay, *see Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *22-23 (citing *Dali Wireless*, 2023 U.S. Dist. LEXIS 15774, at *13).

      **B.**      <u>**Traditional factors confirm that the claims against DENSO should be severed and stayed.**</u>

The Court need not address traditional stay factors because the customer-suit exception applies so squarely to justify severance and stay. To the extent the Court chooses to apply the traditional framework, it confirms the propriety of granting Defendants' Motion because each traditional factor favors a stay. These factors are: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Network Sys. Techs.*, 2023 U.S. Dist. LEXIS 203583, at *23 (citation and internal quotation omitted).

**A stay effects no prejudice.** Monterey will not suffer any prejudice if the claims against DENSO are stayed. The proposed stay will not delay resolution of the major issues underlying the claims against Renesas and DENSO: infringement and validity. In addition, a stay will not prejudice Monterey's access to discovery because discovery from Renesas will yield better evidence as Renesas has much greater access to evidence regarding the accused functionality relative to its downstream customers. *See Westport Fuel Sys. Can. v. Ford Motor Co.*, No. 2:21-cv-0453-RWS-RSP, 2023 U.S. Dist. LEXIS 9473, at *9-10 (E.D. Tex. Jan. 19, 2023). DENSO does not, in fact, possess any evidence regarding how the accused features operate. *See* Ex. 7 ¶ 4. This factor, therefore, favors a stay. *See* Ex. 6 at 13 (granting severance and stay where customer represented it did not possess "technical information related to the design or operation of" the accused chips).

**A stay simplifies the issues.**  Courts agree that staying claims against customers achieves "efficiency and judicial economy."  *See Spread Spectrum*, 657 F.3d at 1357 (citation and internal quotation omitted).  Staying Monterey's claims against DENSO would allow the Court to focus on the parties with a greater understanding of "the product's design, rather than . . . secondary parties such as customers."  *In re Papst Licensing GmbH & Co.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011).  There are no patents or accused functionality unique to the claims against DENSO; the patent claims and accused functionality identified for DENSO and Renesas are wholly identical. So resolving the major issues in the case against Renesas will resolve all Monterey's claims against DENSO (or at least resolve all the major issues).  *See supra* §I.A.2.  This factor, therefore, strongly favors a stay.

**This suit has just begun.**  Finally, a stay is warranted as this case remains in its infancy. Discovery has not commenced.  *See Westport Fuel v. Ford*, 2023 U.S. Dist. LEXIS 9473, at *11 (granting a stay where the defendant filed the motion during the suit's "infancy").  The case remains at the pleading stage, with Renesas having filed an answer, ECF No. 13, and DENSO having filed a motion to dismiss, ECF No. 16.

Because all the traditional factors also support a stay, the Court can (and should) sever and stay Monterey's claims against DENSO.

## CONCLUSION

In light of the foregoing, Defendants request that the Court sever this case into two actions—one with Monterey's claims against Renesas and the other with Monterey's claims against DENSO—and stay the latter.

Dated: September 19, 2024

Respectfully submitted,

*/s/ Timothy Saulsbury*
Timothy Saulsbury (CA SBN 281434)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email: TSaulsbury@mofo.com

Yuka Teraguchi (CA SBN 260541) (*pro hac vice*)
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome, Chiyoda-ku
Tokyo, Japan, 100-6529
Telephone: 81-3-3214-6522
Facsimile: 81-3-3214-6512
Email: YTeraguchi@mofo.com

Regan J. Rundio (TX SBN 24122087)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Telephone: (512) 617-0650
Facsimile: (737) 910-0730
Email: RRundio@mofo.com

Caleb Woods (DC BN 1780872) (*pro hac vice*)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C., 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
Email: CalebWoods@mofo.com

*Attorneys for Defendant*
*Renesas Electronics Corp.*

*/s/ Steven J. Routh*
Steven J. Routh (DC BN 376068)
srouth@orrick.com
Sten Jensen
sjensen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave.
Washington, DC 20037
Tel: (202) 339-8400
Fax: (202) 339-8500

*Attorneys for Defendants DENSO Corporation and*
*DENSO International America, Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies pursuant to Local Rule CV-7(h) that lead and local counsel for movant and non-movant met and conferred by teleconference on September 17, 2024. The conference participants included: for Defendants, Steven J. Routh and Timothy Saulsbury; and for Plaintiff, Brian Ledahl and Minna Y. Chan. The parties are at an impasse, because counsel for Plaintiff represented that Plaintiff opposes the relief requested. The motion is opposed.

*/s/ Timothy Saulsbury*
Timothy Saulsbury

*/s/ Steven J. Routh*
Steven J. Routh

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy Saulsbury, hereby certify that on September 19, 2024 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Timothy Saulsbury*
Timothy Saulsbury
