UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MONTEREY RESEARCH, LLC<br><br>        *Plaintiff*,<br><br>v.<br><br>RENESAS ELECTRONICS<br>CORPORATION, et al.<br><br>        *Defendants*. | Case No. 2:24-CV-00238-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF MONTEREY RESEARCH, LLC'S RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND STAY
PENDING RESOLUTION OF CLAIMS AGAINST RENESAS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 2

III. LEGAL STANDARD..................................................................................................... 4

IV. ARGUMENT .................................................................................................................. 5

      A. The Customer Suit Exception Is Inapplicable as DENSO Is Not a "Mere Reseller"........................................................................................................... 5

          1. DENSO Is a Part Owner of Renesas and They Work Closely Together to Market and Sell the Accused Products in the United States ............................................................................................... 5

          2. Renesas's Refusal to Stipulate to Liability for Accused Products Manufactured Abroad and Imported Into the United States Further Weighs Against Application of the Customer Suit Exception.................... 6

      B. Given Renesas's Refusal to Stipulate to Liability for Sales in the United States, It Is Unlikely that Adjudication of the Claims Against Renesas Will Dispose of the Claims Against DENSO ............................................................... 10

      C. Staying the Claims Against DENSO Would Unduly Prejudice Monterey By Forcing It to Litigate Its Claims Serially and by Allowing Defendants to Manipulate Venue Via REA's NDCA Declaratory Judgment Action.................. 12

V. CONCLUSION.............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
  No. No. 2:22-cv-00126-JRG-RSP 2022 WL 3113556 (E.D. Tex. Aug. 3, 2022) ...................... 9

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ........................................................................................................... 5

*DSS Tech. Mgmt., Inc. v. Intel Corp.*,
  No. 6:15-CV-130, 2015 WL 12806514 (E.D. Tex. Nov. 12, 2015) ................................. *passim*

*In re Triton Ltd. Sec. Litig.*,
  70 F. Supp. 2d 678 (E.D. Tex. 1999) ..................................................................................... 12

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
  No. 2:21-CV-00113-JRG, 2022 WL 17484264 (E.D. Tex. July 7, 2022) ............................... 12

*RPost Holdings, Inc. v. DocuSign, Inc.*,
  No. 2:12-CV-683-JRG, 2013 WL 12334834 (E.D. Tex. Sept. 9, 2013) .................................. 5

*SAS Inst. Inc. v. World Programming Ltd.*,
  No. 2:18-CV-00295-JRG WL 8331447 (E.D. Tex. Apr. 4, 2019) ................................. 4, 8, 12

*SAS Inst. Inc. v. World Programming Ltd.*,

*Shifferaw v. Emson USA*,
  No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ........................... 4, 7

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
  No. 2:21-CV-0453-RWS-RSP WL 318466 (E.D. Tex. Jan. 19, 2023) ................................ 9, 10

I.      INTRODUCTION

Defendants' motion to sever and stay the claims against DENSO Corporation ("DENSO Corp.") and DENSO International America, Inc. ("DIA")[1] pending resolution of the claims against Renesas Electronics Corporation ("Renesas") is without merit and should be denied.

The entire basis for Defendants' motion is that DENSO is merely a reseller of the accused chips manufactured by Renesas. Thus, according to Defendants, the DENSO claims should be severed and stayed pursuant to the customer suit exception of the first-to-file rule. But even the limited information currently available to Monterey Research, LLC ("Monterey") shows that DENSO is much more than a mere reseller. Indeed, it is undisputed that DENSO is a part owner of Renesas. And as alleged in the complaint, Renesas and DENSO are close collaborators in making and developing the accused products. That DENSO may not modify the accused products is thus inconsequential, as DENSO and Renesas have a special relationship that is more akin to a partnership than the manufacturer/customer relationship to which the customer suit exception is typically applied.

In addition, during the parties' meet and confer regarding the instant motion, Monterey asked if Renesas would stipulate to liability for foreign-made infringing products that are sold or imported in the United States. Renesas refused, which further undermines Defendants' assertion that the claims against DENSO are peripheral. This Court has repeatedly declined to apply the customer suit exception under similar circumstances, as it would force the plaintiff into subsequent and highly duplicative litigation against the so-called customer defendants in order to recover damages. This is directly contrary to the customer suit exception's underlying purpose to make litigation more efficient and less costly.

---

[1] The DENSO defendants (DENSO Corp. and DIA) are collectively referred to as "DENSO."

It also bears noting that shortly before Defendants filed the instant motion to stay, Renesas Electronics America Inc. ("REA"), a wholly-owned U.S. subsidiary of Renesas, filed a declaratory judgment action against Monterey in the Northern District of California ("NDCA") regarding the *same patents and products* at issue in this case. Defendants offer no explanation as to why they have no issue with REA's DJ action moving forward, despite REA appearing to be a "mere reseller" of the accused Renesas chips. Defendants' request to have Monterey's claims against DENSO stayed in favor of the claims against Renesas (who may assert that it has no liability for many of the accused products) and REA's DJ claims in the NDCA appears to be a thinly veiled attempt to use the customer suit exception as a means to manipulate venue and have infringement and invalidity issues decided in their preferred forum. This further weighs against the requested stay.

Defendants' motion should be denied.

## II. BACKGROUND

Monterey filed the complaint in this case six months ago. Dkt. 1. The complaint alleges that Defendants infringe the following patents that generally relate to computer memory, computer processors and microcontrollers, and computer display interfaces: United States Patent Nos. 6,243,300 ("'300 patent"); 7,679,968 ("'968 patent"); 7,089,133 ("'133 patent"); and 7,825,688 ("'688 patent"). *Id.*

As alleged in the complaint, Renesas and DENSO Corp. are Japanese entities. *Id.* ¶¶ 5–6. DIA is a wholly-owned U.S. subsidiary of DENSO Corp. *Id.* ¶ 7. The complaint further alleges that Renesas designs and manufactures infringing products, and that DENSO incorporates the infringing Renesas products and components into products sold and/or imported in the United States. *Id.* ¶ 8. The complaint makes clear, however, that DENSO is not merely a reseller or customer of Renesas. Rather, "Denso and Renesas are close collaborators in making and

developing computer components for use in a wide variety of applications served by Denso products." *Id.* Indeed, it is undisputed that DENSO is a part owner of Renesas. *Id.*; *see also* Dkt. 13 (Defendant' Answer to the Complaint) ¶ 8.

The complaint goes into further detail about Renesas and DENSO's relationship:

> Defendant Renesas works closely with its customers, OEMs, foundry suppliers, distributors, and/or other third parties to make, use, sell, offer to sell, and/or import semiconductor devices, integrated circuits, and/or products containing the same. The Denso Defendants are an important customer and OEM for Renesas. Denso integrates Renesas semiconductor devices and integrated circuits into a wide variety of devices that are integrated into other products, particularly for applications in the automotive industry, ranging from engine control units to in-cabin information and display systems. The Denso Defendants make such devices for numerous leading auto manufacturers. Renesas develops and optimizes semiconductor products for automotive applications that are integrated by Denso into products designed for leading auto manufacturers in the United States and around the world. Defendants' affirmative acts in furtherance of the manufacture, use, sale, offer to sell, and importation of their products into the United States include, but are not limited to, any one or combination of: (i) designing specifications for manufacture of their products; (ii) collaborating on, encouraging, and/or funding the development of processes for the manufacture of their products; (iii) soliciting and/or sourcing the manufacture of their products; (iv) licensing, developing, and/or transferring technology and know-how to enable the manufacture of their products; (v) enabling and encouraging the use, sale, or importation of their products in the United States; and (vi) advertising and selling their products and/or downstream products incorporating them in the United States.

Dkt. 1 ¶ 22.

In short, Monterey is informed and believes that Renesas and DENSO, as part owner of Renesas, work closely together regarding the design and development of the accused products such that there is no need for further customization or alteration on DENSO's end.

On September 17, 2024, the parties met and conferred regarding the instant motion to sever and stay. During the meet and confer, counsel for Monterey raised the concern that Renesas, a foreign entity, may not actually sell or import at least some of the accused products or otherwise commit infringing acts within the United States, in which case only the DENSO defendants would be liable for the asserted patent infringement claims. Accordingly, Monterey requested that

Renesas stipulate to liability for accused products sold, offered for sale, or imported in the United States. Renesas declined.

Meanwhile, on September 3, 2024, Renesas Electronics America Inc., a wholly-owned U.S. subsidiary of Renesas, filed a declaratory judgment action against Monterey in the Northern District of California. *Renesas Electronics America Inc. v. Monterey Research, LLC*, No. 3:24-cv-06223-JSC (N.D. Cal.). The DJ action filed by REA seeks a declaration of non-infringement of the *same four patents* asserted by Monterey against Renesas and DENSO in this case, and with respect to the many of the *same accused products*. Indeed, REA's complaint expressly mentions and refers to this "Texas Suit." REA, Dkt. 1 ¶¶ 19–20. Defendants offer no explanation as to why they have no issue with REA's lawsuit going forward, despite the fact that REA and DENSO appear to be similarly situated in that they do not actually manufacture the accused products but rather procure them from Renesas. Thus, if Defendants' motion to sever and stay is granted, Monterey could very well find itself in a position where the claims against DENSO are stayed, it is revealed in discovery that Renesas is not liable for infringement for the products sold by DENSO, and the only claims moving forward are REA's DJ claims in the NDCA.

### III.  LEGAL STANDARD

In deciding whether to sever and stay claims under Rule 21, courts consider "'(1) whether the remaining claims are peripheral to the severed claims,' and '(2) whether adjudication of the severed claims would potentially dispose of the remaining claims.'" *SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019) (quoting *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010)) (denying motion to sever and stay reseller and customer claims).

4

In deciding to whether to stay a given matter, courts also consider the following three factors: "(1) whether the stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-CV-1113-JRG-RSP, 2015 WL 12910768, at *1 (E.D. Tex. July 22, 2015) (denying motion to stay claims against retailer defendants).

As discussed below, these factors weigh against severing and staying the claims against DENSO.

## IV. ARGUMENT

### A. The Customer Suit Exception Is Inapplicable as DENSO Is Not a "Mere Reseller"

#### 1. DENSO Is a Part Owner of Renesas and They Work Closely Together to Market and Sell the Accused Products in the United States

When deciding whether claims against purported customer defendants should be severed and stayed pending resolution of claims against the manufacturer brought in the same suit, "a primary consideration is the 'just, convenient, efficient, and less expensive determination' of the case." *DSS Tech. Mgmt., Inc. v. Intel Corp.*, No. 6:15-CV-130, 2015 WL 12806514, at *2 (E.D. Tex. Nov. 12, 2015). Thus, in order for the exception to apply the movant must demonstrate, *inter alia*, that the so-called customer defendants are "merely resellers" such that the claims against them are "peripheral" to the claims against the manufacturer (here, Renesas). *See id.*; *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-CV-683-JRG, 2013 WL 12334834, at *2 (E.D. Tex. Sept. 9, 2013).

Here, Defendants cannot show that DENSO is a "mere reseller" of the accused products. As explained in the complaint, DENSO and Renesas are "close collaborators in making and developing" the accused components for use in products made and sold by DENSO. Dkt. 1 ¶ 8. In

addition, it is *undisputed* that DENSO owns a significant portion of Renesas. *Id.*; *see also* Dkt. 13 ¶ 8. It is thus clear that DENSO is much more than a "mere reseller." DENSO and Renesas are more akin to partners than the typical manufacturer/retailer relationship to which the customer suit exception is usually applied.

DENSO argues that the customer suit exception applies because it does not modify or customize the accused features of the accused Renesas chips. Mot. at 8. But even if true, this is unsurprising given Renesas and DENSO's special relationship. As part owner and close collaborator of Renesas, DENSO presumably has a lot of influence in the design and development of the accused chips that are incorporated into its automotive products. Thus, DENSO does not modify the accused products because it does not have to. Renesas designs and manufactures them according to the specifications required by DENSO. At minimum, Defendants' motion is premature. Monterey should at least be given the opportunity to pursue discovery on the relationship between Renesas and DENSO, and the extent to which DENSO contributes to or influences the design and development of the accused products, before the Court determines whether severing and staying the DENSO claims is appropriate here.

### 2. Renesas's Refusal to Stipulate to Liability for Accused Products Manufactured Abroad and Imported Into the United States Further Weighs Against Application of the Customer Suit Exception

Renesas's refusal to stipulate to liability for accused products imported into the United States further weighs against a stay here. Indeed, this Court declined to apply the customer suit exception under nearly identical circumstances in *DSS v. Intel*. In that case, it was undisputed that DSS's infringement allegations against the Intel customer defendants (Dell, AT&T, Wal-Mart, etc.) were based on the customers' sale or use of products incorporating the Intel microprocessors. 2015 WL 12806514, at *2. However, it was also undisputed that 30 to 50% of the accused Intel chips were manufactured at Intel's facility in Israel, and that such foreign-made chips were

incorporated into products that would only constitute an infringing act once the Intel customer defendants imported those products into the U.S. or offered them for sale in the U.S. *Id.* The Court noted that "absent Intel stipulating to be liable for these foreign-sourced chips, DSS must pursue subsequent litigation against the Intel Customer Defendants in the event DSS prevails against Intel." *Id.*

The Court further noted that at the motion hearing, Intel—like Renesas—*declined* to stipulate to liability for accused products made or assembled abroad and imported into the United States, and "only agreed that it would be estopped from arguing those chips do not infringe in any subsequent litigation." *Id.* at *3. Intel's proposal to sever and stay the customer claims would thus "force[] DSS and the Intel Customer Defendants into subsequent and highly duplicative litigation to recover a large portion of the damages." *Id.* The Court rejected Intel's argument that it was the "true defendant," as Intel would only be responsible for the non-foreign made chips which, based on the record before it, accounted for only 50–70% of DSS's alleged injury. *Id.* The Court explained that "[t]his contrasts the typical situation where courts stay claims against mere retailers because the manufacturer can be held responsible for the full injury." *Id.* (quoting *Shifferaw*, 2010 WL 1064380, at *3 ("Where a single manufacturer is the *only entity* in the U.S. who makes and sells the only accused products to retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer.")). Thus, "[r]ather than being peripheral, DSS's claims against the Intel Customer Defendants are separate from and comparable to DSS's claims against Intel." *Id.* The Court also noted that discovery could reveal that the percentage of foreign-manufactured chips could be much less than 30% or much higher than 50%, and that this "uncertainty" further counseled against severance. *Id.* at *3 n.3.

This Court similarly declined to apply the customer suit exception in *SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, where the manufacturer's conduct regarding the development of the accused WPS System "*may* have occurred in the United Kingdom." 2019 WL 8331447, at *3 (E.D. Tex. Apr. 4, 2019) (emphasis added). The Court reasoned that the sale of the WPS System by WPL to the customer defendants (e.g., Pizza Hut) "may be crucial to prove actionable patent infringement," which "only reinforces the conclusion that the Reseller and Customer Claims are not peripheral." *Id.* The Court further noted that "while WPL's satisfaction of a judgment against it on the WPL claims might limit [plaintiff's] ability to seek recovery from the Reseller and Customer Defendants, WPL's present financial position and prior litigation positions make it far from certain that complete satisfaction would (or could) actually be made." *Id.* at *4.

The same reasoning applies here. In fact, the argument for severing and staying the claims against DENSO is much weaker here given that it appears that 100% of the accused chips are manufactured outside the United States. While Renesas itself undoubtedly sells some of the accused products in the United States, DENSO separately appears to be the actual importer and seller of many of the accused products. Thus, Renesas may argue that Renesas chips are only infringing once DENSO imports or offers them for sale in the United States, in which case DENSO, and only DENSO, could be held responsible for the damages suffered by Monterey for those products. Renesas cannot be considered the true defendant under such circumstances. As in *DSS* and *SAS*, in the event Monterey prevails against Renesas, and given Renesas's refusal to stipulate to liability for the foreign-sourced chips incorporated into DENSO's products, Defendants' proposal would force Monterey to pursue subsequent costly and duplicative litigation against DENSO. This is directly contrary to the customer suit exception's purpose to secure the "just,

convenient, efficient, and less expensive determination of the case." *Id.* at *2. At minimum, Monterey should be permitted to take discovery on Renesas's potential liability for damages in this case. If discovery confirms that Renesas does not commit any infringing acts within the United States for many of the accused products, then the requested severance and stay is wholly inappropriate here and would only serve to delay Monterey's recovery and increase Monterey's (and the Court's) costs.

Defendants' cited cases are easily distinguishable, as none involve circumstances where the customer defendants were part owners of the upstream manufacturer, or where the manufacturer refused to stipulate to liability for accused components manufactured or assembled abroad and imported into the United States. Indeed, in *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, No. 2:21-CV-0453-RWS-RSP, the manufacturer defendant expressly claimed it was "the only Bosch entity that imports and sell the accused devices in the United States," and that "as the sole importer … it should be treated as if it is the sole source and manufacturer." 2023 WL 318466, at *3 (E.D. Tex. Jan. 19, 2023). In light of this representation, the court found that allowing the manufacturer's DJ action to proceed first "would resolve the major issues in the instant suit, *including liability for damages*." *Id.* (emphasis added). And in *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. No. 2:22-cv-00126-JRG-RSP, the vehicle (customer) defendants agreed to (a) stipulate that they import and sell the accused module in the United States and (b) provide evidence regarding the unit counts of accused module each vehicle defendant sells or imports in the United States, and the manufacturer defendant "*agreed to accept liability for those unit counts*." 2022 WL 3113556, at *2 (E.D. Tex. Aug. 3, 2022) (emphasis added). These agreements supported the Court's finding that the claims against the vehicle defendants were peripheral. *Id.*

Renesas's refusal to accept liability for its infringing products sold or imported in the United States makes this case far more analogous to *DSS v. Intel*. Accordingly, the Court should likewise reject Defendants' assertion that Monterey's claims against DENSO are peripheral.

**B.    Given Renesas's Refusal to Stipulate to Liability for Sales in the United States, It Is Unlikely that Adjudication of the Claims Against Renesas Will Dispose of the Claims Against DENSO**

As discussed above, due to the nature of Defendants' foreign supply chain, Renesas may argue that it is not liable for the foreign-manufactured chips that are imported and sold within the United States by DENSO. Thus, far from being the *only source* of the accused product in the U.S., Renesas may take the position that it is not the source of some of the accused products within the U.S. at all—at least not one that can be held liable for infringement damages under § 271. In that case, adjudication of the claims against Renesas would *not* dispose of the claims against DENSO. If Monterey prevails against Renesas, Monterey would then have to litigate its claims against DENSO in order to recover damages for Defendants' infringing products. Thus, unlike *Westport*, allowing the claims against Renesas to proceed first would *not* resolve the major issues in this case, which includes liability for damages. This would make the litigation more complex, not simpler. *See DSS*, 2015 WL 12806514, at *3 (explaining that severing would only dispose of the issue of whether the accused Intel chips infringe the asserted patents, but that "any subsequent litigation would nevertheless involve proofs of infringing acts (i.e., importation or selling of accused products incorporating foreign made Intel chips) by the Intel Customer Defendants," and that "severing would increase the complexity of the damages by requiring the Intel Customer Defendants to apportion the accused products that are sourced with domestic-fabricated Intel chips (for this litigation against Intel) and with foreign-fabricated Intel chips (for the subsequent litigation)," which "is not a trivial task").

DENSO's limited agreement to be bound by the Court's rulings and judgments regarding infringement and invalidity does not solve these problems. The parties will still have to litigate these complicated damages issues, including those relating to Monterey's willfulness allegations (e.g., Dkt. 1 ¶ 25), after a stay against DENSO is lifted. Contrary to Defendants' assertions, these claims cannot be "resolved through exhaustion or the bar against double recovery" (Mot. at 10) if Monterey cannot recover against Renesas at all for accused products imported and sold in the U.S. by DENSO.

In addition, with respect to validity, DENSO's stipulation states only that it agrees to be bound by "any final, non-appealable judgment regarding the validity" of the asserted patents. Dkt. 27-9. The stipulation does *not* contain any statement that DENSO agrees to be estopped from raising any invalidity arguments not raised by Renesas. Thus, DENSO would be free to re-litigate the validity of the asserted claims after the stay is lifted—just with different prior art or based on other statutory grounds. Accordingly, the proposed stay will not resolve the "major issue" of validity either. Rather, it would just give DENSO an unfair opportunity take a second bite at the apple after seeing how Renesas's invalidity arguments play out. DENSO would also be free to re-litigate the numerous equitable and other defenses asserted in Defendants' answer, including those related to marking. Dkt. 13 pp. 9–13. *See DSS*, 2015 WL 12806514, at *3 (noting that the customers' similarly limited stipulation "leaves every statutory invalidity challenge at issue in any subsequent trials against Intel Customer Defendants" and thus "does not streamline—much less dispose of—any validity issue in the subsequent trial").

In sum, Defendants' assertion that the proposed stay will resolve the major issues in this case is wrong. As summarized by the Court in *DSS*:

> If DSS prevails against Intel, a future court must still determine (1) a small aspect of infringement (proving importation), (2) a substantial aspect of damages and

11

accounting of the accused products, and (3) nearly the entirety of the validity determination. Increasing the complexity of infringement and damages in this suit, then leaving portions of those issues (along with validity) for a subsequent litigation, is not a "just, convenient, efficient, and less expensive determination" of the case.

2015 WL 12806514, at *3. The same holds true here. After the stay is lifted, the parties would still have to litigate infringement, invalidity, and damages issues. It would be far more efficient to have the claims against Renesas and DENSO proceed together, rather than forcing Monterey to litigate them serially.

### C. Staying the Claims Against DENSO Would Unduly Prejudice Monterey By Forcing It to Litigate Its Claims Serially and by Allowing Defendants to Manipulate Venue Via REA's NDCA Declaratory Judgment Action

Severing and staying the claims against DENSO would unduly prejudice Monterey by forcing it to litigate its claims serially, which would substantially increase Monterey's costs and delay its recovery for Defendants' infringement. *See Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00113-JRG, 2022 WL 17484264, at *2 (E.D. Tex. July 7, 2022) ("this Court has repeatedly found that a delay in recovering monetary damages is far from non-prejudicial"); *SAS*, 2019 WL 8331447, at *3 n.5 ("any efficiencies that might be realized by severing and staying these Reseller and Customer Claims are outweighed by the inefficiencies and prejudice that would result from staying the remaining Reseller and Customer Claims"). And while it may be true that DENSO does not "possess any evidence regarding how the accused features operate" (Mot. at 12), certainly DENSO possesses information relating to its own importation and sales within the United States. A stay would delay discovery of this crucial information.

Granting the requested relief would also unduly prejudice Monterey by allowing Defendants to manipulate venue and litigate this patent infringement dispute in their preferred forum (NDCA), while depriving Monterey of its "well-established" right to choose a forum. *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999). As discussed above in Section

II, REA, a wholly-owned U.S. subsidiary of Renesas, filed a declaratory judgment action against Monterey in the NDCA seeking a declaration of non-infringement of the *same four patents* asserted by Monterey against Renesas and DENSO in this case, and with respect to many (but not all) of the *same accused products*. *Renesas Electronics America Inc. v. Monterey Research, LLC*, No. 3:24-cv-06223-JSC (N.D. Cal.). Neither REA nor Renesas has suggested that this DJ action should be stayed pending resolution of the claims against Renesas in this case. The DJ action thus directly contradicts Defendants' purported position that claims against the manufacturer (Renesas) should take precedence over the claims against downstream resellers such as DENSO and REA.

The only reasonable explanation for this contradiction is that Defendants are attempting to delay this case and manipulate venue in order to have infringement and invalidity issues decided in their preferred forum. Renesas seeks to delay suit involving an affiliated reseller in this forum while seeking to advance a later-filed declaratory judgment claim brought by a different affiliated reseller in a different forum. Such tactical maneuvering by Renesas confirms that the instant motion is about its attempt to forum shop and not about efficiency or any other legitimate purpose. This kind of gamesmanship should not be permitted, and further weighs against the requested severance and stay.

While it may be true that this case is in the early stages,[2] the lack of issue simplification and the significant prejudice that Monterey will suffer in the event of a stay, substantially outweigh the factor relating to the stage of the case.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to sever and stay should be denied.

---

[2] Monterey agreed to extend the deadline to file a Proposed Docket Control Order and Proposed Discovery Order from October 2 to October 9, 2024. *See* Dkt. 28.

Dated: October 4, 2024                           Respectfully submitted,


                                                 /s/ *Brian Ledahl*

                                                 Brian Ledahl (CA SBN 186579)
                                                 bledahl@raklaw.com
                                                 Reza Mirzaie (CA SBN 246953)
                                                 rmirzaie@raklaw.com
                                                 Minna Y. Jay (CA SBN 305941)
                                                 mjay@raklaw.com
                                                 James N. Pickens (CA SBN 307474)
                                                 jpickens@raklaw.com
                                                 RUSS AUGUST & KABAT
                                                 12424 Wilshire Blvd. 12th Floor
                                                 Los Angeles, CA 90025
                                                 Phone: (310) 826-7474

                                                 ***Attorneys for Plaintiff,***
                                                 ***Monterey Research, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on October 4, 2024 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Brian Ledahl*
Brian Ledahl
