IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MONTEREY RESEARCH, LLC, § § *Plaintiff*, § § v. § § RENESAS ELECTRONICS § CORPORATION, DENSO § CORPORATION, and DENSO § INTERNATIONAL AMERICA, INC., § § *Defendants*. § § | CIVIL ACTION NO. 2:24-CV-00238-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Opposed Motion to Transfer Under § 1404(a) (the "Motion") filed by Defendants Renesas Electronics Corporation ("Renesas"), DENSO Corporation ("DENSO Corp."), and DENSO International America, Inc. ("DIAM") (collectively, "Defendants"). (Dkt. No. 36.) Having considered the Motion and related briefing, the Court finds that it should be **DENIED**.

**I.      BACKGROUND**

Plaintiff Monterey Research, LLC ("Plaintiff") filed this lawsuit against Defendants on April 10, 2024. (Dkt. No. 1.) Plaintiff accuses Defendants of directly, indirectly, and willfully infringing four United States patents. (*Id.*) Plaintiff alleges that DENSO's incorporation of the accused Renesas chips into its products infringes the asserted patents. (*Id.*)

Defendants filed the Motion on October 10, 2024. (Dkt. No. 36.) In the Motion, Defendants request that the Court transfer this case to the Northern District of California based on convenience under Section 1404(a). (*Id.* at 1.)

## II.  LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). "A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is ***clearly more convenient*** taking into consideration" the public and private factors. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added and cleaned up).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315.

## III.  DISCUSSION

### A.  Defendants Have Not Shown that Plaintiff Could Have Brought this Case in the Northern District of California Against All Defendants

As noted above, the first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Only if this statutory requirement is

2

met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *Volkswagen II*, 545 F.3d at 312.

Defendants broadly allege that Plaintiff could have brought this case in the Northern District of California. (Dkt. No. 36 at 5.) Defendants assert that Renesas "would also be subject to specific personal jurisdiction in the NDCA because, under Monterey's theories, [Renesas] provides accused products to its California-based subsidiary, REA, and/or purportedly induces REA to infringe." (*Id.*) Defendants assert that DIAM "would likewise be subject to specific personal jurisdiction in the NDCA based on the same allegations Monterey included in its complaint in this action, and venue would be proper over DIAM in the NDCA because it has a regular and established place of business in San Jose, California." (*Id.*) Defendants make no argument concerning why the Northern District of California would have specific personal jurisdiction over DENSO Corp. (*See generally id.*)

Plaintiff responds that Defendants do not "state why DENSO Corp. would be subject to personal jurisdiction in the NDCA." (Dkt. No. 50 at 4.) Plaintiff also argues that it is insufficient for Defendants to merely repeat Plaintiff's pleaded theories to support Defendants' argument that DIAM would be subject to personal jurisdiction in the Northern District of California. (*Id.* at 4-5.) Plaintiff further argues that Defendants do not allege that DIAM has committed acts of infringement in the Northern District of California. (*Id.* at 5.)

Defendants sought to remedy their shortcomings in their reply by broadly asserting that Plaintiff could have sued both DENSO entities under the same stream of commerce theory Plaintiff asserts against Renesas. (Dkt. No. 50 at 2.) Defendants also respond that "California courts have exercised personal jurisdiction over DENSO and its subsidiaries dozens of times in the past two decades, including in patent cases." (*Id.*)

3

The Court agrees that Defendants have failed to meet their burden to show that Plaintiff could have brought this case in the Northern District of California. To determine whether this case "might have been brought" in the Northern District of California, the Court must find either that each Defendant (1) resides in that District or (2) has "committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Defendants have failed to meet their statutory burden.[1] Defendants cannot merely rely on Plaintiff's assertions of jurisdiction and venue to meet their burden. *Opticurrent, L.L.C. v. Bitfenix Co.*, 2022 WL 599225, at *3 (E.D. Tex. Feb. 25, 2022). Disregarding Defendants' parroting of Plaintiff's personal jurisdiction theories, Defendants have failed to state whether the Northern District of California has personal jurisdiction over each defendant. *E.g.*, *In re Samsung Electronics Co., Ltd.*, No. 2024-129 (Fed. Cir. July 9, 2025). Defendants do not even allege why the Northern District of California would have specific personal jurisdiction over DENSO Corp. Further, concerning venue, Defendants have failed to meet their burden to establish why venue in the Northern District of California would be proper as to DIAM because Defendants fail to allege that they have committed acts of infringement in the Northern District of California. "While the Court does not fault Defendants for not admitting that they infringe, the Court does find that Defendants' failure to allege in the Motion that they commit *alleged* acts of infringement in [the Northern District of California] is an independent basis for determining that this action could not have been brought in the [Northern District of California]." *Iarnach Techs. Ltd. v. Charter Commc'ns Inc., et al.*, No. 2:24-cv-00230-JRG, 2025 WL 509445, at *3 (E.D. Tex. Feb. 14, 2025).

---

[1] While Defendants attempted to cure their deficiencies in their reply, Defendants are prohibited from doing so. *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, 2018 WL 279091, at *2 (E.D. Tex. Jan. 3, 2018), *objs. overruled*, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018), *pet. denied In re LG Elecs., Inc.*, No. 2018-134, 2018 U.S. App. LEXIS 39409 (Fed. Cir. Apr. 24, 2018). Therefore, the Court disregarded Defendants' new arguments raised for the first time in their reply brief.

Accordingly, the Court finds that Defendants have failed to carry their burden on the threshold issue to show that Plaintiff could have brought this case in the Northern District of California. While the Court, under the circumstances, need not consider the private and public interest factors, the Court evaluates such factors in an abundance of caution. Having done so, the Court also finds that Defendants failed to demonstrate that the Northern District of California would be a "clearly more convenient forum," as explained below.

B.  **Timeliness of Defendants' Motion**

The Fifth Circuit emphasized that a party should not delay the filing of a motion to transfer. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989); *see also In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010) (recognizing and applying Peteet in denying petition for mandamus where the district court determined that the movant had failed to file its motion to transfer with reasonable promptness). As this Court has previously explained, "[t]he longer a litigant waits to file a transfer motion, the more resources the parties and the Court will expend by the time the motion is ripe for consideration," meaning that "the later a motion is filed, the less convenient a transfer would be." *Monarch Networking Sols. LLC v. Cisco Sys.*, No. 2:20-cv-00015-JRG, Dkt. No. 127 at 22 (E.D. Tex. Jan. 5, 2021).

Defendants waited approximately six months after receiving service of the Complaint to file their motion to transfer. (Dkt. Nos. 6, 8, 36.) For the reasons discussed below, Defendants' delay has necessarily lessened any convenience that a transfer to the Northern District of California could provide. *Monarch Networking*, No. 2:20-cv-00015-JRG, Dkt. No. 127 at 22. The Court weighs Defendants' delay in filing the Motion along with the private and public interest factors discussed below in determining whether the Northern District of California is a clearly more convenient forum. *See Planned Parenthood*, 52 F.4th at 631 ("The district court was within its

5

discretion to conclude that [movant]'s failure to seek relief until late in the litigation weighed against transfer.").

C.  **Private Interest Factors**

The private factors include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process to secure the attendance of witnesses; (iii) the cost of attendance for willing witnesses; and (iv) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

1.  **The Relative Ease of Access to Sources of Proof**

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Remmers v. United States*, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). Courts consider the distance that documents or other evidence must be transported from their existing location to the trial venue. *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this factor is still relevant even if documents are stored electronically). This factor turns on which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* The movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Sols., Inc.*, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Defendants argue that the relevant sources of proof are in Japan and California. (Dkt. No. 36 at 12-13.) Defendants assert that "[e]vidence from Monterey and IPValue[2] is easier to access

---

[2] IPValue Management Inc. ("IPValue") is Plaintiff's licensing agent. (Dkt. No. 1 ¶ 25.)

6

in the NDCA given that Monterey and IPValue personnel … likely generate and maintain patent licensing, assignment, and accounting documentation in the" Northern District of California. (*Id.* at 12.) Defendants assert that Renesas "maintains the relevant technical and financial information in repositories hosted on servers in Japan, and Asia-based [Renesas] personnel create and maintain that information." (*Id.* at 13.) Defendants further assert that "[a]ny DENSO relevant technical and financial information is maintained in Japan." (*Id.*)

Plaintiff responds that "Defendants admit that all of their relevant evidence is located and maintained in Asia." (Dkt. No. 50 at 10.) Plaintiff asserts that "[t]ransporting this evidence to NDCA will be no more convenient than transporting it to this District." (*Id.*) Plaintiff argues that Defendants did not investigate what documents or evidence exists or where they are located and "merely offer unfounded speculation that evidence likely exists or is 'easier to access' in the NDCA." (*Id.* at 10-11.) Plaintiff further argues that its relevant documentary evidence is located in Oklahoma or Tennessee. (*Id.* at 11-12.) Plaintiff asserts that "[t]o the extent that [it] has unique relevant documents at its offices in California, these documents are available electronically and are equally accessible in the EDTX as the NDCA." (*Id.* at 12.)

The Court finds that this factor weighs slightly against transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (cleaned up). As this Court has stated and Defendants concede, "[a]s a foreign corporation with documents well outside the United States, the relative ease of access to its documents will not substantially change across different districts and is thus neutral." *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-00514-JRG, 2018 WL 4680557, at *7 (E.D. Tex. Sept. 28, 2018); *see also In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022) (finding that this factor weighs less strongly on the transfer analysis when "the vast majority

7

of the evidence [is] electronic, and therefore equally accessible in either forum"). Defendants admit that Renesas' documents and any relevant DENSO technical and financial documents are in Japan. Thus, Defendants' documents in Japan are equally inconvenient and accessible for both this Court and the Northern District of California and are neutral in the transfer analysis.

Defendants assert that Plaintiff and IPValue "likely generate and maintain patent licensing, assignment, and accounting documentation in the" Northern District of California. However, a conclusory statement that documents "likely" exist is insufficient for Defendants to carry their burden. *J2 Global*, 2009 WL 440525, at *2 ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties."). Neither party identified any relevant sources of proof in this District, but Plaintiff identified documents in Tennessee and Oklahoma, which is closer to the Eastern District of Texas than the Northern District of California.

On balance, the Court finds that this factor weighs slightly against transfer.

### 2. The Availability of the Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 315-16. This factor favors transfer where "non-party witnesses … are outside the Eastern District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available. *Id.* at 316 (cleaned up). Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). "[T]he

8

availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31 (cleaned up).

Defendants argue that this factor strongly favors transfer because relevant third-party witnesses reside in the Northern District of California. (Dkt. No. 36 at 11-12.) Defendants assert that one of the sole named inventors of one of the asserted patents resides in the Northern District of California. (*Id.* at 11.) Defendants assert that two former IPValue personnel with knowledge regarding willfulness and damages reside in the Northern District of California. (*Id.*) Defendants assert that "NDCA-based attorneys prosecuted three of the asserted patents and have knowledge relating to inventorship and potential inequitable conduct or unclean hands." (*Id.* at 11-12.) Defendants further contend that prior art witnesses with knowledge of a specific prior art reference reside in California according to public records. (*Id.* at 12.)

Plaintiff responds that "Defendants improperly cherry-pick various witnesses in the NDCA who have little if any relevance to this issues in this case, and who are unlikely to even be deposed, much less testify at trial." (Dkt. No. 50 at 8-10.) Plaintiff argues that Defendants rely on attorneys who prosecuted three of the asserted patents, but Renesas did not assert inequitable conduct or unclean hands in its Answer. (*Id.* at 8-9.) Plaintiff argues that Defendants rely on one inventor who potentially has information regarding conception and invalidity, but Defendants ignore the other eleven named inventors who reside in Japan or Washington. (*Id.* at 9.) Plaintiff also contends that the former IPValue personnel do not possess any unique, material knowledge. (*Id.* at 9-10.) Plaintiff asserts that Defendants cherry-pick witnesses from a single prior art reference, and those inventors' testimony is speculative at best. (*Id.* at 10.) Plaintiff further argues that it "will likely require testimony from third-party customers regarding their use of the accused products," such as Toyota, which has its headquarters in this District. (*Id.* at 8.)

9

The Fifth Circuit has instructed that "the availability of compulsory process [factor] receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31 (cleaned up); *see also In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023). Defendants have neither shown nor alleged that any non-party witness would be unwilling to testify in this case. Further, Defendants do not identify a single witness who they expect to testify at trial. *See R2 Sols. LLC v. Databricks Inc.*, 2024 WL 4932719, at *4 (E.D. Tex. Dec. 2, 2024) (finds this face neutral where "neither party asserts that any non-party witness is unwilling to attend trial."). On the record before it, the Court has no way of knowing whether any of these witnesses may be sought for trial testimony, let alone whether any such witnesses would be unwilling and require compulsory process.

Defendants seek transfer based on convenience—a request for which *Defendants* bear the burden—yet Defendants fail to provide the Court with sufficient evidence to conclude that their proposed forum would be any more convenient than this District under this factor. Accordingly, the Court finds that this factor weighs against transfer.

### 3. The Cost of Attendance for Willing Witnesses

The third private interest factor considers the cost of attendance for willing witnesses. When analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. The Federal Circuit has described this factor as being the most important. *Genentech*, 566 F.3d at 1343. The Fifth Circuit has established a so-called "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343.

Defendants argue that the Northern District of California is more convenient for Plaintiff and IPValue witnesses. (Dkt. No. 36 at 6.) Defendants assert that Plaintiff's only employee and the

10

relevant IPValue witnesses reside in the Northern District of California. (*Id.*) Defendants also argue that the Northern District of California is more convenient for Renesas witnesses. (*Id.* at 6-9.) Defendants assert that the Renesas employees most knowledgeable about the accused functionality, financials, sales, and patent licensing practices reside in Asia. (*Id.* at 7-9.) Defendants also argue that the Northern District of California is more convenient for DENSO Corp. and DIAM, although Defendants contend that no DENSO witnesses are necessary. (*Id.* at 9-10.) Defendants assert that "[n]o employee at DIAM's Plano, Texas, operation has knowledge relevant to this action" and "[t]o the extent DENSO's participation in this action is required for any purposes, the participants would be employees of DENSO Corp. who live and work in Japan." (*Id.*) Defendants further argue that the Northern District of California is more convenient for relevant non-party witnesses, including one of the inventors who resides in Washington. (*Id.* at 10.) Defendants contend that Alan Loudermilk's, a Marshall resident who represented Renesas during a meeting with IPValue, knowledge is cumulative of other Renesas employees. (*Id.*)

Plaintiff responds that the Northern District of California would not be more convenient for Plaintiff or IPValue. (Dkt. No. 50 at 6-7.) Plaintiff asserts that the witness most knowledgeable about Plaintiff's "licensing efforts, corporate structure, financials, and communications with Defendants" lives in Mounds, Oklahoma. (*Id.* at 6.) Plaintiff asserts that Plaintiff's intellectual property counsel, who "is most knowledgeable about the pre-suit licensing discussions with Defendants and other third-parties," resides in Harriman, Tennessee. (*Id.* at 6-7.) Plaintiff asserts that two of the witnesses Defendants identify as knowledgeable IPValue witnesses "do not have unique material knowledge about any of the issue in this case." (*Id.* at 7.) Plaintiff also argues that the Northern District of California is not significantly more convenient for Defendants' party witnesses because "[e]very single one of their identified employee witnesses is in Asia, mostly

11

Japan," not in or near the Northern District of California. (*Id.*) Plaintiff further argues that Defendants' identified willing third-party witnesses are either willing to travel to Texas or reside in this District. (*Id.* at 8.)

As an initial matter, this factor concerns willing witnesses "*for trial*." *TikTok*, 85 F.4th at 361 (emphasis added). While both parties identify witnesses with potentially relevant knowledge, neither party states that they will be witnesses *for trial*.[3] The Court could find, based on the parties' failure to identify willing witnesses for trial, that this factor is neutral in the transfer analysis. However, to be fulsome, the Court will address the parties' identified witnesses under this factor and assume—though it is not required—that the parties intend to call these witnesses at trial.

Regarding Defendants' identified party witnesses in Asia, the Federal Circuit and Fifth Circuit have found that traveling from Asia to California "would greatly reduce the time and inconvenience of travel" as opposed to traveling from Asia to Texas. *In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023); *TikTok*, 85 F.4th at 361. However, weighing against transfer are the non-party IPValue witnesses who reside in Oklahoma and Tennessee. Another witness who weighs against transfer is Mr. Loudermilk, who resides in this District and has knowledge regarding the parties' pre-suit communications. Courts properly give more weight to the convenience of non-party witnesses than to party witnesses. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012).

Accordingly, the Court finds that this factor weighs slightly against transfer.

---

[3] While Defendants include a statement that they "plan to bring their most knowledgeable witnesses to trial" in their reply, Defendants failed to include this in their Motion. The Court disregards new arguments and statements raised for the first time in a reply brief. *Fundamental Innovation*, 2018 WL 279091, at *2.

### 4. Other Practical Problems

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 545 F.3d at 315.

Defendants argue that this factor favors transfer because Renesas brought a declaratory judgment action against Plaintiff involving the same patents and products at issue in this case in the Northern District of California. (Dkt. No. 36 at 13-14.) Defendants assert that "[t]ransferring this case to the NDCA will serve judicial economy and avoid inconsistent judgments." (*Id.* at 13.)

Plaintiff responds that the Court should reject Defendants' reliance on the Northern District of California declaratory judgment action because it "is entirely duplicative of Monterey's claims against Renesas in this action." (Dkt. No. 50 at 12-13.) Plaintiff argues that "under the first-to-file rule, this case takes precedence." (*Id.* at 13.) Plaintiff also argues that Defendants' delay in filing the Motion weighs against transfer. (*Id.* at 5-6.)

In response to Plaintiff's delay argument, Defendants assert that they "moved before the parties produced confidential documents or served initial disclosures … [a]nd neither party ha[d] propounded interrogatories." (Dkt. No. 59 at 5.)

On December 10, 2024, the Northern District of California stayed Renesas' declaratory judgment action under the first-to-file rule, pending resolution of this case. (Dkt. No. 64 at 1.) Thus, this argument is moot. However, the Court finds that Defendants' delay in moving to transfer is a fact that weighs against transfer. *Monarch Networking*, No. 2:20-cv-00015-JRG, Dkt. No. 127 at 21-23. Defendants waited approximately six months after Plaintiff filed the Complaint to move for transfer. Approximately two months before moving to transfer, DENSO Corp. and DIAM moved to dismiss the Complaint under Rule 12(b)(6). (Dkt. No. 16.) Approximately a month before moving to transfer, Renesas moved to sever and stay the claims against DENSO Corp. and DIAM under the customer-suit exception. (Dkt. No. 27.) The Court agrees that "Defendants …

13

strategically planned the timing and sequence of their motions in furtherance of their plan to obtain their preferred forum." (Dkt. No. 60 at 5.)

Accordingly, the Court finds that this factor weighs slightly against transfer

### D. Public Interest Factors

The public factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized interests decided at home; (iii) the familiarity of the forum with the law that will govern the case; and (iv) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

#### 1. Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. This factor is the most speculative, and this factor alone should not outweigh other factors. *Id.*

Defendants argue that this factor is speculative and the Court should accord it no weight. (Dkt. No. 36 at 14.) Plaintiff responds that the median time to trial in this District is shorter than in the Northern District of California. (Dkt. No. 50 at 13-14.)

The Court finds that this factor slightly disfavors transfers, but the Court affords it less weight due to its speculative nature. The Court agrees that this District has a faster median time-to-trial than the Northern District of California. The Fifth Circuit recognizes that "the district court is better placed" to evaluate "docket efficiency." *Planned Parenthood*, 52 F.4th at 631. The case is timely proceeding to trial before this District. *Id.* (finding that this factor normally weighs against transfer when a "case appears to be timely proceeding to trial before the" transferee district.).

Accordingly, the Court finds this factor weighs slightly against transfer.

14

### 2. Local Interest

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206. This factor considers the relationship between the dispute and the community from which the jury pool will be drawn, as "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *Volkswagen II*, 545 F.3d at 318.

Defendants assert that the Northern District of California has a greater local interest that favors transfer. (Dkt. No. 36 at 14-15.) Defendants argue that the Northern District of California "has an interest in seeing the resolution of a claim brought by one of its residents," Plaintiff. (*Id.*) Defendants assert that the asserted patents were either prosecuted by attorneys in the Northern District of California or invented in the Northern District of California. (*Id.* at 15.) Defendants further argue that "this case affects the reputations of Monterey and other NDCA-based companies." (*Id.*) Defendants contend that this District has no localized interest in this case. (*Id.*)

Plaintiff responds that the Northern District of California does not have a localized interest in this case because "Renesas and DENSO Corp. are based in Japan[,] … have no offices or employees in the NDCA[,]" and "the accused products are designed, developed, and manufactured exclusively by Renesas in Japan." (Dkt. No. 50 at 14.) Plaintiff argues that contrary to Defendants' assertions, "this District has a strong interest in this case given DIAM's substantial (and expanding presence) in Plano since 2019." (*Id.* at 14-15.) Plaintiff also responds that the presence of a non-party and the prosecuting attorneys has little relevance. (*Id.* at 15.)

The Court finds this factor slightly disfavors transfer. While the parties have focused on the parties, and non-parties, connections to the venues, the Fifth Circuit has directed courts to

consider "the significant connections between a particular venue and the *events* that gave rise to a suit," not "the parties' connections to the venue." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis added); *see also TikTok*, 85 F.4th at 364. Defendants represent that the design, development, and manufacturing of the accused Renesas chips occurs in Japan. (Dkt. No. 36 at 2.) Plaintiff accuses DENSO's incorporation of the accused Renesas chips into its products of infringement, which are distributed nationwide, including in Texas. (Dkt. No. 1.) Where all design, development, and research occur overseas, this factor will rarely favor transfer. *Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, No. 2:17-cv-00558-JRG, 2018 WL 11474182, at 7 (E.D. Tex. May 30, 2018). Further, Plaintiff's presence in the Northern District of California does not create events giving rise to this suit, it simply indicates Plaintiff's ties to the Northern District of California, which the Fifth Circuit has instructed not to consider. *TikTok*, 85 F.4th at 364 ("We look not to 'the parties' significant connections to each forum ... but rather the significant connections between a particular venue and the events that gave rise to a suit.'") (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022)).

Accordingly, the Court finds that this factor is neutral in the transfer analysis.

### 3. Familiarity of the Forum with Law and Conflict of Law

Defendants assert that "[a]s in most patent cases, the final two public interest factors—(1) the familiarity of the forum with the governing law; and (2) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law—favor transfer." (Dkt. No. 36 at 15 n.2.) Plaintiff responds that courts usually find these factors neutral in the transfer analysis. (Dkt. No. 50 at 15.)

The Court agrees with Plaintiff that these factors are neutral. This Court has no doubt that the Northern District of California could competently handle this patent case.

Therefore, the Court finds these factors neutral.

### E. Balancing the Factors

Given the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise that tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found four factors weighs slightly against transfer, one factor weighs against transfer, and the remaining factors weigh neutrally, the Court concludes that the Northern District of California is not a "clearly more convenient" forum for this case. Accordingly, considering the weight of the specific factors and the facts of this case, the Court finds that Defendants' Motion to Transfer Under § 1404(a) (Dkt. No. 36) should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Transfer Under § 1404(a) (Dkt. No. 36) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 15th day of July, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE